UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| JEFFREY TODD BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 0:15-cv-00117-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY BERRYHILL, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Jeffrey Todd Buck seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Buck's claim for supplemental security income benefits, disability insurance benefits, and continuation of a period of disability. Mr. Buck brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Buck's Motion for Summary Judgment [R. 11] and will GRANT the Commissioner's Motion for Summary Judgment [R. 14.]

**I**

**A**

Plaintiff Jeffrey Todd Buck filed an application for a Title II period of disability and disability insurance benefits and Title XVI supplemental social security in December 2012, alleging disability beginning on July 1, 2012. [Transcript (hereinafter, "Tr.") 13.] Buck's motion for summary judgment explains that Buck suffers from, among other things, stress induced weight loss, lack of appetite due to pain, back pain that runs into both legs, disc trouble,

severe arthritis in both thumbs, occasional limited mobility due to pain, and mental health issues such as depression and anxiety. [*See* R. 11-1 at 2.] Buck's claims for Title II and Title XVI benefits were denied initially and upon reconsideration. [Tr. 13.] Subsequently, a hearing was conducted upon Buck's request. [*See id.*] Following the hearing, ALJ Charles J. Arnold issued a final decision denying all of Buck's claims for benefits. [Tr. 13-22.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1]  First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

2

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Buck meets the insured status requirements of the Social Security Act through March 30, 2015. [Tr. 13, 15]; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Buck had not engaged in substantial gainful activity since July 1, 2012, his alleged disability onset date. [Tr. 15.] At step two, the ALJ found Buck to suffer from the severe impairments of depression, lumbar degenerative disc disease, spinal degenerative changes, and radiculopathy. [Tr. 15.] At step three, the ALJ determined Buck's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [*Id.*] Before moving on to step four, the ALJ considered the entire record and determined Buck possessed the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain limitations described as follows:

3

> [L]imited to low stress unskilled work without high production demands; no more than simple, routine, repetitive tasks with simple instructions; no interactions with the public; and only minimal or indirect contact with others at the worksite.

[Tr. 17.]  After explaining how he determined Buck's RFC [Tr. 17-20], the ALJ found at step four that, based on this RFC, Buck is unable to perform past relevant work.  [Tr. 21.]  Even in light of this finding, the ALJ found that, following the vocational expert's testimony, due to the Buck's relatively young age, English language ability, education, RFC, and work experience, there are a significant number of jobs in the national economy that Buck can perform.  [*Id.*]  Accordingly, the ALJ concluded that Buck could successfully adjust to other work and that Buck was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g).  [Tr. 21-22.]  Since the Appeals Council declined to review the ALJ's decision, the ALJ's opinion serves as the Commissioner's final decision.  [*See* Tr. 1-3.]  Buck now seeks judicial review in this Court.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

4

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

The Court first addresses Mr. Buck's contention that the ALJ failed to give adequate reasons for discounting a treating physician's residual functional capacity (RFC) finding. [*See* R. 11-1 at 8.] Buck draws the Court's attention to the treating physician, Dr. Ira Potter's, RFC and treatment record. [*See* Tr. 528-532.] Buck notes that Dr. Potter has treated the Plaintiff since December 19, 2012. [R. 11-1 at 9.] Further, Dr. Potter's RFC from April 17, 2014, states that Mr. Buck has low back pain rated an 8/10 that has gradually worsened, "range of motion is moderately decreased," there is "disc protrusion at two levels in the lumbar spine," radiculopathy, diminished left Achilles reflex, and positive straight leg raising test results. [Tr. At 528, R.11-1 at 10.] Dr. Potter also noted that Buck is being treated by a mental health professional and has complained of depression, difficulty sleeping, and has had some thoughts contemplating suicide. [*Id.*]

5

Despite these findings, the ALJ ruled that while Dr. Potter's medical opinion "had limited weight in determining limitations, it was disregarded as treatment and other evidence failed to support restrictions consistent with less than sedentary capacity." [Tr. At 20.] This was, in part, because the ALJ determined that Buck may not be as debilitated as alleged because he was not actively seeking continued treatment from specialists or other medical professionals. [*See id.*] Buck argues that he had received treatment prior to and after the hearing including a dexamethasone injection four days before the hearing and epidural steroid injections after the hearing. [R. 11-1 at 10-11.] The transcript shows that Buck did notify the ALJ that shortly before the hearing he was unable to walk and that as part of his treatment the attending doctors "gave me shots for inflammation and nerve pain in my legs." [Tr. at 34.]

Evidence of injections or treatment received after the ALJ hearing have no bearing on the case, as this information was not available to the ALJ at the time he made his decision and was submitted by Mr. Buck only to this Court in the Motion for Summary Judgment. [*See* R. 11-1 10-11.] The Sixth Circuit "has repeatedly held that evidence submitted . . . after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The information concerning epidural steroid injection after the hearing was simply not available to the ALJ when he reviewed Mr. Buck's claims and thus provides no grounds whatsoever for Buck to now argue the ALJ improperly ignored it. But, the evidence presented in Buck's testimony to the ALJ at the evidentiary hearing must be considered.

The Social Security Administration's regulations provide that:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not

6

> give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). The other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), d(3)-d(5); 416.927(d)(2)(i)-(ii), d(3)-d(5).

The regulations also contain a clear procedural requirement that the ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants [to] understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (citation and internal quotation marks omitted). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546. "To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with

7

§ 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections rendered therein illusory." *Id.*

Dr. Potter found that Buck was limited to lifting or carrying 10-15 lbs. occasionally and 6-8 lbs. frequently. [Tr. 530.] Dr. Potter reported Buck could stand a maximum of 2 hours in an 8 hour work day with the longest uninterrupted stretch being 30 minutes. Last, Buck could sit for 3 hours a day but the longest sitting period without interruption is 1 hour. [*Id.*] The ALJ discounted the treating physician's opinion and accorded less than controlling weight after finding that, "[t]here was no clear evidence to support the claimant could not tolerate stress of performing unskilled low stress work, despite the assessment noting an incapacity." [Tr. at 20.] Further, "[t]he level of intervention and type of care provided failed to support restrictions in excess of sedentary" and besides failing to actively pursue treatment from specialists, the ALJ disregarded Dr. Potter's opinion because "treatment and other evidence failed to support restrictions consistent with less than sedentary capacity." [Tr. at 20.]

In coming to this conclusion the ALJ reviewed the record in its entirety which includes "the claimant's allegations, medical findings, opinions, and third party statements" [Tr. at 18] as well as reports or notes by Dr. Allen Dawson, the Disability Determination Services doctor, Deidre Parsley, D.O., Dr. Pavan Kolluri, Dr. Potter, the treating physician, and vocational expert Gina Baldwin. [*See Id.* at 13-22.] Dr. Potter's RFC conflicted with Dr. Parsley's 2013 findings, as Dr. Parsley only limited Buck to some work-related activities and the pushing or pulling of heavy objects. [Tr. at 470-475.] Here, the ALJ has provided good reasons for discounting the treating physician's opinion as the ALJ was merely "presented with the not uncommon situation of conflicting medical evidence" and as trier of fact "ha[d] the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

8

Under 20 C.F.R. § 404.1527(d)(2), a treating source's opinion on issues of the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostics techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §404.1527(d)(2)); *see also Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). More than mere disagreement with the ALJ's conclusion or the weight the ALJ ascribed to certain opinions is required to successfully assign error to an ALJ's findings. *See, e.g., Richards v. Astrue*, at *8 (N.D.Ohio, June 8, 2012) (quoting *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *7 (W.D.Mich. Mar. 26, 2012)).

Here, the ALJ specifically mentioned that Dr. Potter's opinion had "limited weight" and that it "was disregarded as treatment and other evidence failed to support restrictions consistent with less than sedentary capacity." [Tr. at 20.] These statements are sufficiently specific in denoting what weight the treating physician's opinion was given and satisfy the "good reasons" requirement of 20 C.F.R. § 404.1527(c)(2), as the ALJ found the treating physician's opinion to lack evidentiary support. As stated above, the decision to uphold the ALJ's decision is made in light of this courts duty to determine whether the Commissioner's decision is supported by substantial evidence. In reviewing the ALJ's ruling, this Court did not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).

**B**

Next, Mr. Buck alleges that the ALJ's residual functional capacity "is not based upon substantial evidence and is inconsistent with the ALJ's own findings." [R. 11-1 at 12.] First, Buck alleges that his testimony at the hearing and evidence in the record do not support the ALJ's RFC. [*Id.* at 13.] Buck also argues that the ALJ's RFC is not supported by the claimant's objective medical findings because of contrary findings introduced by Dr. Potter, Dr. Parsley, and the MRI and EMG studies. [R. 11-1 at 14.] Finally, Buck alleges that of the treating physician, non-examining state agency physician, and examining state agency physician, the ALJ gave "great weight to a physician, then failed to include any of the restrictions in the RFC." [*Id.*]

Buck alleges that the ALJ "minimized the claimant's complaints" by disregarding the claimant's hearing testimony as to his pain and restricted physical abilities. [R. 11-1 at 13.] Despite the fact that Buck described his symptoms and pain in detail at the hearing and in the record, "a claimant's subjective complaints of pain or other symptoms cannot alone establish disability." [R. 14 at 9 citing 20 C.F.R. § 404.1592(a); *see also Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (holding that "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability.".] There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, at 852. Ultimately, the ALJ was unpersuaded by Buck's allegations of pain and remarked that "the claimant does not appear to be actively pursuing treatment from specialists or others to suggest his condition is as debilitating as alleged."[2] [Tr. at 20.] Thus, Buck's conservative treatment history did not support a conclusion of disabling pain.

---

[2] Buck's failure to pursue additional or specialized treatment opportunities impacted the ALJ's consideration of the claimant's testimony at the hearing. The ALJ remarked that "[n]otably, the claimant also received no alternative forms of invasive or noninvasive care such

10

Throughout the ALJ's written opinion he discussed medical evidence, including the treating physician, consultative examining medical consultants, and the state agency medical consultant. [*See* Tr. 17-20.] It is true that Dr. Parsley found the claimant "would have limitations with bending, stooping, lifting, walking, crawling, squatting, carrying, and pushing and pulling heavy objects," [R. 11-1 at 15.] But, Dr. Parsley also determined that the claimant "ambulated with a antalgic but steady gait, he had no difficulty with sitting and standing during the examination and he had no difficulty ambulating." [R. 14 at 10.] In light of these observations, Dr. Parsley "did not set forth specific limitations in any of these areas other than the pushing and pulling of heavy objects." [R. 14 at 10 citing Tr. 470-475.]

Buck suggests that Dr. Parsley's limitations were not appropriately adopted by the ALJ's RFC therefore the RFC was not based on credible opinion evidence. But, the ALJ specifically mentioned that "limitations with regard to kneeling, crawling, pushing or pulling, or postural activities do not significantly erode the occupational base at sedentary." [Tr. at 19 citing SSR 96-9p, 85-15.] Additionally, the state agency medical consultant Dr. Alan Dawson supported the ALJ's RFC when he "opined that Plaintiff retained the residual functional capacity for sedentary exertion work with additional postural, manipulative and environmental limitations." [R. 14 at 11 citing Tr. 90-93.] Finally, when considering medical source opinions, an ALJ has the discretion to "decide whether to adopt or not adopt each one." SSR 96-5P, 1996 WL 374183, at *4.

As explained above, longstanding Sixth Circuit case law establishes that as long as the ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if

---

as chiropractic treatment, injections, surgical recommendations, TENS unit, or the like" and "despite his reported increase in symptoms his doctor felt his condition did not warrant additional or specialized care and was managed by use of over the counter products. [Tr. at 18.]

substantial evidence would support the opposite conclusion." Bass, 499 F.3d at 509. Here, ALJ Arnold's findings take into account Buck's limitations that are supported by evidence in the record, as well as some of his subjective complaints that are not entirely supported. Any possible error in discounting Buck's credibility is harmless in light of the substantial evidence that supports the ALJ's conclusions. *See Ulman*, 693 F.3d at 714. Seeing that it is not this court's responsibility to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations, the ALJ's decision should be upheld as his opinion was based upon a careful review of the record and the opinion is supported by substantial evidence. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).

### III

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Plaintiff Jeffrey Todd Buck's Motion for Summary Judgment [R. 11] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 14] is **GRANTED**; and

3. Judgment in favor of the Defendant shall be entered contemporaneously herewith.

This the 23rd day of March, 2017.



Gregory F. Van Tatenhove
United States District Judge